[Crim. No. 7186.   Second Dist., Div. Three.   Feb. 3, 1961.]

THE PEOPLE, Respondent, v. PATSY PALMER, Appellant.

Morris Lavine for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury convicted defendant of grand theft. She appeals from the judgment sentencing her to state prison, from an order denying her motion for a new trial, and from an order denying her motion for a continuance of the hearing of her motion for a new trial. ▮ The latter order is not appealable and the appeal therefrom will be dismissed. (Pen. Code, § 1237.) It is asserted the court denied defendant's constitutional right to the aid of counsel. We have concluded the point is well taken.

. The chronology of proceedings below follows:

May 15, 1959—information filed accusing defendant of unlawfully taking $1,650 from May D. Grassman.

May 26, 1959—defendant arraigned, represented by Mr. Forno as her counsel.

June 8, 1959—defendant, appearing with Mr. Forno, pleaded not guilty. Trial set for July 15, 1959.

July 14, 1959—cause advanced from July 15 and continued to July 23, 1959 at request of defendant, represented by Mr. Forno.

July 22, 1959—cause advanced from July 23 and continued to August 27 at request of defendant, represented by Mr. Forno.

August 27, 1959—Mr. Forno appeared. Defendant did not. Trial ordered off calendar.

September 3, 1959—defendant appeared with Mr. Forno. Trial continued to October 8, 1959, because counsel engaged in trial.

October 8, 1959—on motion of Mr. Forno, he was relieved as counsel for defendant and at request of defendant, appearing in propria persona, trial continued to November 5.

November 5, 1959—cause called for trial. Defendant appeared in propria persona.

When the cause was called for trial Mr. Maines, a deputy public defender, appearing as a friend of the court, stated defendant had asked him to request a continuance. He stated defendant had informed him: She had been under a doctor's care for some time and she had three letters which he had read and they seemed to verify that fact; she had been unable to prepare her case properly; she had witnesses whom, because of her illness, she had been unable to obtain.

The court then asked defendant why she did not get a lawyer. This colloquy followed: Defendant: "Your Honor, I was planning on being a pro per and I was taken ill and I tried to get an attorney. Now, there are three attorneys——." The Court:

"I don't care who they are. Why don't you have someone representing yourself today?" Defendant: "Your Honor, these attorneys are engaged in trial. I know exactly where they are." The Court: "I am not interested in where they are. There are 4,000 lawyers in the county; I don't care anything about where any of them are." Defendant: "They will verify that they will handle this case. I have been terribly ill and I realize there had been continuances on this, but I have been in the middle of doing a script deal and I even had to break appointments on this script thing, I have been so ill. I have funds for necessary medical care that I need for my dental work, my teeth are all out and I am badly in need of medical care. I will have proper counsel and I am asking the Court to give me until the 17th of December, and I will have everything ready. . . ." The Court: "The motion for continuance is denied. The matter is marked ready for jury trial. You will represent yourself." Defendant: "Your Honor, it is impossible." The Court: "It is not impossible. Just sit down there; we will get to it as soon as I finish other matters."

After other matters had been disposed of, the cause was called again and the following occurred: "Miss Palmer: May I make a motion for your reconsideration of my continuance? The Court: Surely. Miss Palmer: I would like to show you these medical affidavits. (Miss Palmer hands some documents to the Court.) The Court: The motion for a continuance is denied." The documents are not part of the record on review.

Defendant said she had another reason for a continuance and these proceedings were had at the Bench: Defendant: "Mr. Walker and Mr. Gilmore of the State Pharmacy Board are both out of the office at this time, and they will verify that they are conducting an investigation on the barbiturates use of the plaintiff and the plaintiff's sister, and it is going to take about two weeks' time. I have proof the plaintiff's sister and the plaintiff have been getting barbiturates illegally." The Court: "That has nothing to do with the case." Defendant: "Yes, it does." The Court: "I said it doesn't. There has to be a place where someone has the last word, and I happen to be the one who has it. We have to get to trial." Defendant: "I am really not well enough and I don't want to go before a jury without my teeth, and this laryngitis——." The Court: "The motion is denied. Go ahead and choose the jury. You had plenty of time to get yourself a lawyer." Defendant: "I have been ill, that is why, your Honor."

A jury was then impaneled, after which the following oc-

curred: Defendant: "At this time may I make a motion? I want to make a motion after the jury is completed, if we could recess this trial until tomorrow morning and give me time to familiarize myself with this transcript." The Court: "No, there will be no continuance." Defendant: "I have to get my witnesses subpoenaed, your Honor, and I have to familiarize ·myself with this court transcript. I did not expect to go to trial this morning." The Court: "The motion is denied." The trial then proceeded on November 5, 1959. The prosecution put on its case. Defendant called one witness and the cause was continued to November 6.

On November 6 defendant told the court she had retained Mr. Ernest M. Miller as her counsel. Mr. Miller stated: "Your .Honor, I would like to at this time make a motion to declare .a mistrial in this matter based on the following grounds: One, that my client, Miss Palmer, is physically and mentally nonfit .at this time to continue the trial. Second, that she was under the impression that due to the physical condition she finds herself in now, and the doctor's supporting statement, that a .continuance of this trial would be granted, and based upon this assumption she has failed to obtain witnesses to be present on her behalf. The third ground is that I was just retained last evening after one complete day of trial during which the jurors were picked, the prosecution witnesses have been on the stand, and that therefore coming in at this stage I would be severely handicapped by being unable to examine the jurors .and cross-examine the prosecution witnesses, and I feel in the interest of justice to my client, based on these reasons, and the further reason—strike that. Based on these reasons I feel that a mistrial should be declared in this matter and that in the event such a mistrial is declared, that I have been retained by Miss Palmer and go on record as her counsel for the entire proceedings. However, in the event that the mistrial is not declared, and this trial is continued over Miss Palmer's and my objections, then I feel that I must withdraw at this point, based upon the difficulties previously mentioned in that I have not been able to cross-examine the prosecution witnesses nor examine the jurors." After a statement by the district attorney as to what the record showed with respect to continuances, Mr. Miller continued: "Your Honor, I would like to add one ground for my request for mistrial that I overlooked in my original statement, and that is that during this *previous continuance that the defendant requested she has attempted to obtain counsel*; however, she had found herself

without funds and was unable to obtain counsel." Further colloquy between the court, Mr. Miller, and defendant is stated in the margin.[1] November 6, 1959, was a Friday. Mr. Miller asked for a continuance to the following Monday. The request was denied and the trial continued, defendant acting in propria persona.

The California Constitution provides: "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend, in person and with counsel." (Const., art. I, § 13.)

*In re Masching*, 41 Cal.2d 530 [261 P.2d 251], a proceeding in habeas corpus, is practically on all fours with the case at bar. In Masching the petitioner was arraigned and pleaded not guilty on May 13, 1952. His trial was set for June 12. When the cause was called that day the petitioner appeared without counsel and the following occurred (p. 532): " 'THE COURT: Do you want this matter continued and for what purpose? DEFENDANT MASCHING: Well, sirs, I have been confined to bed for the last three weeks and I would like a chance to

---

[1] 'THE COURT: Counsel, I don't think you are in a position to make that as a statement of fact. You don't know anything about it except what the defendant has told you. MR. MILLER: Would you make the statement in court? MISS PALMER: May I make the statement? THE COURT: Counsel speaks for you, so you be seated. MR. MILLER: This is what she informed me, and I know of one counsel whom she did contact who turned the case down. THE COURT: I am interested in what we have here, not what she has been doing. There is absolutely no grounds for motion for a new trial, and it is denied. She has the opportunity of having you sit with her in an advisory capacity if she so desires. That is a personal matter between you and her. The matter will continue at the present time. MISS PALMER: Your Honor, may I say something? THE COURT: No. MR. MILLER: I would like to make one other request, then, since the decision has been not to declare a mistrial, and that is a request for a continuance of this particular case for at least several days. THE COURT: There will not be a continuance. How could you have a jury around here doing nothing for four or five days? MR. MILLER: At least until Monday—— THE COURT: Counsel, I told you before we called the defendant in, when you were in asking to have yourself come into the case, the only thing I told you I would do, if you were to appear and help this defendant, whatever disability she is under is her own arrangement, I told you if you want to come in and take the case I would grant you a continuance so you can examine any witnesses you can get over the week-end, but I won't continue the matter unless you are in the case. MR. MILLER: I felt she would be as much entitled to having the witnesses present as I would. THE COURT: We would have to put the jurors on the inactive list; they could not do a thing. They could not serve in another trial and they would have to hang around here day after day. It is ludicrous. MISS PALMER: May I say something, your Honor? THE COURT: No."

get my witnesses, and also counsel. THE COURT: You have had plenty of time to do that. Motion denied. The matter will be sent out for trial.' '' The petitioner was then tried, found guilty, and sentenced to imprisonment. Additional facts are stated in the opinion (p. 533):

"Petitioner alleges that as a result of the accident he was confined in bed for three weeks with fractured ribs and a head injury, that during that period he was unable to secure an attorney or arrange to subpoena witnesses, that he was without funds to hire counsel and that a few days before trial he sought assistance from the public defender but was informed that this officer did not represent persons charged with driving while intoxicated. Petitioner further alleges that he at no time waived his right to counsel, that no attorney was appointed to aid him although a deputy public defender and other attorneys were present in the courtroom at the time of his trial, and that he was not sufficiently acquainted with legal procedure to know that he had to do anything other than request a continuance for time to obtain an attorney. . . .

"It should be noted at the outset that there is nothing which indicates that petitioner waived his right to have an attorney. No express waiver was made, and there is no basis for implying one in view of the fact that petitioner informed the court, when his case was called for trial, that he wished to obtain counsel.

"As we have seen, the record shows without dispute that petitioner informed the trial court that he had been 'confined to bed for the last three weeks' and that he would like a chance to get witnesses and counsel. While petitioner did not directly state that the illness or disability which confined him to bed prevented him from obtaining counsel, it is obvious that this is the meaning of his statement to the court. It must be remembered, in this connection, that petitioner did not then have the aid of an attorney to prepare a more specific or more detailed explanation for his appearance without counsel, and it would of course be unreasonable to apply to him the same standards of skill expected of an attorney. The declaration of the trial court to petitioner that 'You have had plenty of time' to obtain counsel is not justified by the record and does not meet petitioner's explanation that he was confined to bed during the three weeks immediately preceding the trial.

"Since petitioner was not represented by an attorney when his case was called for trial, the court should have been particularly careful to safeguard his rights, and, before rejecting

his uncontradicted explanation, it should have at least questioned him as to any doubts it might have had with respect to the truth or validity of his statement. Instead, however, the court summarily denied his request for a continuance and ordered trial to commence at once. Under all the circumstances this procedure amounted to a denial of petitioner's constitutional right to counsel. It follows that his conviction cannot be permitted to stand and that he should be remanded to custody for further proceedings in the municipal court in conformity with his right to counsel.''

At bar, Mr. Forno represented defendant from the time of arraignment until October 8, 1959, when he was relieved as her counsel. The reason he was relieved does not appear. On October 8 the cause was set for trial for November 5. The record shows defendant informed the court she had been ill and had tried to get an attorney. She said, ''Now, there are three attorneys——'' when she was interrupted by the judge saying, ''I don't care who they are. Why don't you have someone representing yourself today?'' Defendant replied that these attorneys were engaged in trial and she knew exactly where they were. The judge commented: ''I am not interested in where they are. There are 4,000 lawyers in the county; I don't care anything about where any of them are.'' Defendant stated they would verify that they would handle her case, and she had been ''terribly ill''; her teeth were all out; she would have counsel if the court continued the case until December 17. She said she was not well enough to go to trial, that she did not want to go before a jury with her teeth out and ''this laryngitis.'' The court denied the motion and stated, ''You had plenty of time to get yourself a lawyer.'' Defendant replied, ''I have been ill, that is why, your Honor.''

Mr. Maines, a deputy public defender who happened to be in the courtroom, told the court defendant had told him she had been under a doctor's care for some time, that she had three letters in court which he had read and they seemed to verify that fact; that she had witnesses which, because of her illness, she had been unable to obtain. Mr. Maines was not defendant's attorney; he happened to be in the courtroom and stated he was not defendant's attorney, that she did not have one, that she was in ''pro per.''

Defendant asked the judge if she could show him ''these medical affidavits,'' and the documents were handed to him. In view of the uncontradicted statement of Mr. Maines that

the documents seemed to verify defendant's statement of her illness, we must assume they did so. In any event, her statements respecting her illness, as in Masching, were uncontradicted. Defendant did not then have the aid of an attorney to prepare a more specific or more detailed explanation for her appearance without counsel and it would be unreasonable to apply to her the same standards of skill expected of an attorney. (*In re Masching*, 41 Cal.2d 530, 534 [261 P.2d 251].) Defendant at no time waived her right to counsel. There was no express waiver, and there is no basis for implying one.

Before rejecting the uncontradicted statements of Mr. Maines and defendant regarding her illness, the court should have at least questioned defendant as to any doubts it may have had with respect to the truth or validity of the statements. The declaration of the judge to defendant that "You had plenty of time to get yourself a lawyer" is not justified by the record and does not meet defendant's explanation with respect to her illness. Under the circumstances the procedure followed by the trial court amounted to a denial of defendant's constitutional right to counsel.

We have examined the record of the trial and of defendant's efforts to defend herself. The record is eloquent proof of the wisdom of the observation that "The guiding hand of counsel is needed lest the unwary concede that which only bewilderment or ignorance could justify. . . ." (*Tomkins* v. *Missouri*, 323 U.S. 485, 488 [65 S.Ct. 370, 89 L.Ed. 407, 413].)

Other errors assigned are not likely to occur on a retrial and need not be discussed.

The appeal from the order denying defendant's motion for a continuance of the hearing of her motion for a new trial is dismissed. The judgment and order denying a new trial are reversed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 3, 1961, and respondent's petition for a hearing by the Supreme Court was denied March 29, 1961. Schauer, J., was of the opinion that the petition should be granted.